# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| RUSSELL COUNTRY SPORTSMEN; MONTANA TRAIL VEHICLE RIDERS ASS'N; GREAT FALLS TRAIL BIKE RIDERS ASS'N; MEAGHER COUNTY LITTLE BELTERS; GREAT FALLS SNOWMOBILE CLUB; TREASURE STATE ALLIANCE; MOTORCYCLE INDUSTRY COUNCIL; SPECIALTY VEHICLE INSTITUTE OF AMERICA; THE BLUERIBBON COALITION, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES FOREST SERVICE; LEWIS AND CLARK NATIONAL FOREST; LESLEY W. THOMPSON, Forest Supervisor, <br><br> Defendants. | No. CV 08-64-GF-SEH <br><br> MEMORANDUM AND ORDER |

## INTRODUCTION

Plaintiffs Russell Country Sportsmen, Montana Trail Vehicle Riders Association, Great Falls Trail Bike Riders Association, Meagher County Little Belters, Great Falls Snowmobile Club, Treasure State Alliance, Motorcycle

1

Industry Council, Specialty Vehicle Institute of America, and The Blueribbon Coalition filed this action under the Administrative Procedure Act (APA) against Defendants the United States Forest Service, Lewis and Clark National Forest and Lesley W. Thompson, Forest Supervisor (collectively referred to as Forest) seeking declaratory and injunctive relief. An additional party, Montana Wilderness Association (MWA), was joined as Intervenor-Defendant.

Plaintiffs seek review of the Forest's final decision approving its 2007 Travel Management Plan for the Little Belt, Castle and North Half Crazy Mountains (2007 Travel Plan). Both Plaintiffs and Defendants have moved for summary judgment. Hearing on the motions was held on January 14, 2010. Supplemental point briefs were submitted. The matter is ripe for decision.

## BACKGROUND[1]

A Land and Resource Management Plan, or Forest Plan, establishes general planning direction for individual units of the National Forest System. A 1986 Forest Plan divided the System into specific management areas. Such areas are essentially geographically defined zones within the National Forest System, each having corresponding goals and standards. The 1986 Forest Plan provided

---

[1] The facts set forth in this section are drawn from undisputed facts of record before the Court.

generally that the System would be open to vehicle travel except for roads, trails, or areas specifically restricted. Within the broader Forest Plan, the Forest establishes more detailed travel plans. A travel plan is a site-specific, project-level, planning program which analyzes and directs activities at specific locations in the forest.

The Lewis and Clark National Forest 2007 Travel Plan was adopted by a Record of Decision (ROD) issued in October 2007. It affects all National Forest System lands within the Little Belt, Castle, and the north half of the Crazy Mountains, and totals some 1,050,110 acres, or approximately 86% of the Jefferson Division of the Lewis and Clark National Forest, and about 53% of the entire Lewis and Clark National Forest.

In 2000, the Forest initiated the 2007 Travel Plan process by conducting outreach to determine public understanding of the 1988 Travel Plan. In addition, it assessed the need to update and revise travel management restrictions. In September 2005, publication of a Notice of Intent in the Federal Register began formal public scoping of the project. The Forest compiled a list of "significant issues" to be evaluated.

A Draft Environmental Impact Statement (DEIS) was prepared and circulated to agencies, organizations and individuals of record in the project file

3

beginning July 7, 2006. It presented a total of seven distinct alternatives. Winter and summer recreation were separated in the analysis, with four summer and three winter recreation alternatives. A total of 1,783 comments to the DEIS were received. No preferred alternative was identified, or made available for public comment.

The ROD and Final Environmental Impact Statement (FEIS) were released in October 2007. A final decision not presented or analyzed as a DEIS alternative, and which differed from the DEIS in several particulars was selected by the Forest Supervisor. Differences included: (1) the FEIS was more restrictive of motorized travel than any DEIS alternative; (2) cross-country travel associated with dispersed camping was reduced to vehicle plus trailer length from the 300 feet of an existing route allocated in the DEIS; and (3) the winter snowmobiling period was shortened from May 15 to May 1.

A summer recreation network with less mileage for vehicle use than was presented in any of the DEIS alternatives also was designated in the ROD. The DEIS Summer Alternative 1 was the least restrictive alternative and the Summer Alternative 4 was the most restrictive. The ROD compares to Summer Alternatives 1 and 4 as follows:

Total Miles Designated by Vehicle Type

|          | Pass  | 4x4 | ATV | Motorcycle | Total |
|----------|-------|-----|-----|------------|-------|
| Summer 1 | 1,523 | 514 | 260 | 739        | 3,036 |
| Summer 4 | 955   | 397 | 262 | 337        | 1,951 |
| ROD      | 741   | 178 | 222 | 225        | 1,366 |

The ROD reduced total motorized routes by nearly thirty percent from the most restrictive DEIS. It also closed several routes which were not identified for closure in any DEIS alternative.[2]

The ROD and all DEIS alternatives allowed for some measure of off-trail travel for specified purposes, including parking, passing, turning around and camping. All alternatives included a 300-feet-from-roads-or-trails area for specified off-trail travel. The ROD, however, reduced the off-trail travel area to the distance needed to turn around a vehicle plus any attached trailer. No opportunity for public comment on the vehicle plus trailer length restriction was afforded. In fact, it was never presented in any of the DEIS alternatives available for public comment.

---

[2] The closed routes included: Calf Creek Trail 724; Calf Creek connector trail 712a; Dry Pole Canyon Road 6392 and Dry Pole Canyon Trail 458; and East half of Higgins Park Road 6464.

The winter recreation alternatives in the DEIS all contained a season stretching from December 1 to May 15. Without public comment on the change, the ending deadline for winter recreation was changed in the FEIS and ROD to May 1.

A portion of the 2007 Travel Plan controls access within the Middle Fork Judith Wilderness Study Area (Middle Fork WSA), established as part of the Montana Wilderness Study Act of 1977. Prior to 2007, the Middle Fork WSA had 112 miles of roads comprised of 54 miles of highway vehicle roads and 58 miles of ATV/trail bike routes. The ROD designated only 38 miles of routes for motor vehicles, of which 20 miles are for highway vehicles and 18 are ATV/trail bike routes. Essentially, the ROD eliminated roughly two-thirds of previously available motorized routes from the Middle Fork WSA.

## ISSUES PRESENTED

The issues raised are whether the 2007 Travel Plan violates the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321, *et seq.*, and the Montana Wilderness Study Act of 1977 (MWSA), Pub.L. No. 95-150, § 3(a), 91 Stat. 1243 (1977). The answer is yes.

## STANDARD OF REVIEW

### APA Standard

Judicial review in this matter may only proceed under the Administrative Procedure Act (APA). NEPA, National Forest Management Act (NFMA), and MWSA provide for no private right of action. *ONRC Action v. BLM*, 150 F.3d 1132, 1135 (9th Cir. 1998). Agency decisions can only be set aside under APA if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A)(2000).

### Summary Judgment Standard

Summary judgment is available if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Summary judgment is a particularly appropriate means of resolving claims against forest management decisions by the U.S." *Wilderness Soc. v. Bosworth*, 118 F. Supp. 2d 1082, 1089 (D. Mont. 2000)(citations omitted). Here, the facts are settled in the administrative record. This Court must only address the legality of the Forest Service's actions. Summary judgment on issues of APA and statutory compliance is appropriate.

## DISCUSSION

## NEPA

NEPA requires agencies to follow particular procedures when analyzing environmental aspects of ordinary duties. An environmental impact statement must provide information in detail on alternatives to the proposed action. *See* 42 U.S.C. § 4332(2)(c). An adequate environmental impact statement must consider all reasonable alternatives, but need not consider every possible alternative. *See Citizens for a Better Henderson v. Hodel*, 768 F.2d 1051, 1057 (9th Cir. 1985)(citations omitted); *see also* 40 C.F.R. § 1502.14 (2009)("agencies shall rigorously explore and objectively evaluate all reasonable alternatives"). The existence of a viable but unexamined alternative renders an environmental impact statement inadequate. *Id.* (citations omitted).

The "EIS is a procedural obligation designed to assure that agencies give proper consideration to the environmental consequences of their actions." *Merrell v. Thomas*, 807 F.2d 776, 777-78 (9th Cir. 1986)(citation omitted). It also ensures that the public is informed about the environmental impact of such actions. *See Robertson v. Methow Valley Citizens Council*, 490 U.S. 332 (1989). A supplement EIS must be prepared if "[t]he agency makes substantial changes in the proposed action that are relevant to environmental concerns." 40 C.F.R.

8

§ 1502.9(c)(1)(I)(2009).

Here, the Forest failed to consider, or to supplement, reasonable and viable alternatives in the DEIS as required by NEPA. *Id.*; *see also* 40 C.F.R. § 1502.14 (2009). The Forest initially presented seven alternatives in its DEIS, four summer alternatives and three winter alternatives. The alternative ultimately presented in the FEIS and selected in the ROD fell outside the range of alternatives and made numerous, significant changes to the DEIS.

The chosen decision reduced total mileage open for motorized travel by nearly thirty percent beyond the most restrictive DEIS alternative, closed several trails not specified for closure in the DEIS, reduced the snowmobile season short of any DEIS alternative, and scrapped a 300-foot-off-road-travel rule for a much more restrictive "vehicle plus trailer length" area.

The final decision was not discussed in the DEIS as an alternative and was not a blend of DEIS alternatives. Rather, it created a unique and separate alternative. Not only was the unexamined alternative viable and reasonable in the eyes of the Forest, it was chosen as the final agency decision.

NEPA requires, as noted, all reasonable and viable alternatives be considered in the DEIS and that the public be afforded opportunity to make informed comments. *Id.* Here, however, the public was not allowed to comment

9

on major portions of the FEIS and ROD because the original DEIS was not supplemented. Transparency required by law in forming the 2007 Travel Plan was missing. The DEIS is inadequate in its consideration of alternatives. It violated NEPA.

## Montana Wilderness Study Act

The Montana Wilderness Study Act (MWSA) provides:

> Except as otherwise provided by this section . . . the wilderness study areas designated by this Act shall, until Congress determines otherwise, be administered by the Secretary of Agriculture so as to <u>maintain</u> their presently existing wilderness character and potential for inclusion in the National Wilderness Preservation System.

Pub.L. No. 95-150, § 3(a), 91 Stat. 1243 (1977)(emphasis added).

The dilemmas presented by the MWSA have been addressed by Judge Molloy of this Court as follows:

> The nature of the Forest Service's duty is complicated by the fact that Congress intended to reach a final decision on wilderness designation of these areas by 1984. The problem is that Congress did act, and did so unequivocally, but Congress' intent to finalize its intention by either designating the lands as Wilderness or releasing them for other use has never happened.
>
> Thus, for the Forest Service, a relatively short-term management task has burgeoned into a seemingly perpetual dilemma. Non-motorized users complain of

> 'creeping motorization'; motorized users fear 'creeping designation.'"

*Montana Wilderness Ass'n v. McAllister*, 658 F. Supp. 2d 1249, 1253 (D. Mont. 2009)(citing *Montana Wilderness Ass'n v. United States Forest Service*, 146 F. Supp. 2d 1118, 1120 (D. Mont. 2001)).

The same dilemma is presented in this case. A portion of the 2007 Travel Plan manages an area created by MWSA.[3] The Forest chose, as part of the Travel Plan, to eliminate roughly two-thirds of the previously-available motorized routes from the area in question.

The Forest's course of action must be assessed in light of the language of MWSA. That legislation directed the Forest to maintain the wilderness character of Wilderness Study Areas as it existed in 1977. To the extent the wilderness character was there in 1977, it was to be maintained. To the extent the wilderness character was lacking in 1977, it was not to be imposed. As Judge Molloy recently noted "[u]ntil Congress acts to resolve the issue, the Forest Service will be trapped between its administrative obligation to reasonably balance competing land uses and the statutory requirement that it maintain the 1977 wilderness character of the place. The tension between the law's inconsistent mandate can

---

[3]The Middle Fork Judith Wilderness Study Area was created by MWSA and is managed under the 2007 Travel Plan.

11

only be eased and resolved by Congress." *Montana Wilderness Ass'n*, 658 F. Supp. 2d at 1254.

Congress wrote the law. This Court must apply and enforce it as written. The Forest's attempt at enhancement or creation of wilderness character in the Middle Fork WSA by adoption of the 2007 Travel Plan exceeded its authority under MWSA.

## CONCLUSION

Plaintiffs are entitled to have their motion for summary judgment granted as to the findings of violation of NEPA and MWSA under the APA set forth above. Defendants' motion for summary judgment must be denied.

## ORDER

1. Plaintiffs' Motion for Summary Judgment[4] is GRANTED as to violations of NEPA and MWSA under APA as stated.

2. Defendants' Cross-Motion for Summary Judgment[5] is DENIED.

3. The Court will conduct a further hearing to address issues of remedy at 11:00 a.m. on March 29, 2010, at the Missouri River Federal Courthouse in Great Falls, Montana.

---

[4]Document No. 16.

[5]Document No. 25.

4. Each party shall file on or before March 19, 2010, a statement of position as to the remedy or remedies to be implemented.

DATED this 10th day of March, 2010.

*/s/ Sam E. Haddon*
SAM E. HADDON
United States District Judge